IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Modern Perfection, LLC, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Bank of America, N.A., )<br>)<br>Defendant. )<br>) | Civil Action No. 22-cv-02103-LKG<br><br>Dated: August 22, 2023 |

**MEMORANDUM OPINION**

I.   **INTRODUCTION**

In this putative class action, Plaintiffs, Modern Perfection LLC ("Modern Perfection"), Fruitful Bear, LLC ("Fruitful Bear"), Gravity Video, Inc. ("Gravity Video"), Pizzazz! LLC ("Pizzazz"), Eric Snipes Inc. ("Eric Snipes") and Beauté Nest, LLC ("Beauté Nest") (collectively, the "Plaintiffs") allege that Defendant, Bank of America, N.A. ("BofA") breached certain promissory notes that the parties executed for Plaintiffs to obtain loans issued pursuant to the Paycheck Protection Program ("PPP"), and engaged in fraudulent and deceptive practices related to these loans.  *See* ECF No. 35 ¶¶ 220-21.  BofA has filed renewed motions to compel arbitration and to dismiss or stay this matter, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2).  *See generally*, ECF Nos. 46, 47.  The motions are fully briefed.  ECF Nos. 46-49, 53-55, 58.  No hearing is necessary to resolve these motions.  L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court: (1) **GRANTS** BofA's motion to compel arbitration and to dismiss or stay this matter; (2) **DENIES-as-MOOT** BofA's motion to dismiss the amended complaint; and (3) **DISMISSES** the amended complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this putative class action, Plaintiffs allege that BofA breached certain promissory notes that the parties executed for Plaintiffs to obtain loans issued pursuant to the Paycheck Protection Program, and that BofA engaged in fraudulent and deceptive practices related to these loans, by, among other things, falsely representing in the promissory notes that payments to independent contractors were qualifying payroll costs under the PPP and that these payments would be forgiven by the Small Business Administration.  *See* ECF No. 35 ¶¶ 220-21.  In the amended complaint, Plaintiffs assert claims against BofA for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) common law fraud; (4) fraud in the inducement; (5) negligent misrepresentation; (6) violations of the North Carolina Deceptive Business Practices Act, N.C. Gen. Stat. §§ 75-1 *et seq.*; and (7) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.  *See generally*, ECF No. 35.  As relief, Plaintiffs seek, among other things, injunctive and declaratory relief and to recover monetary damages from BofA.  *Id*. at Prayer for Relief.

The Parties

As background, Plaintiffs are small businesses that applied for loans from BofA under the PPP, a program that was established by Congress under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") to help businesses keep their workforce employed during the COVID-19 pandemic.  *See id.* ¶¶ 1, 2, 13-26.

Modern Perfection is a Maryland limited liability company located in Towson, Maryland, that provides professional home interior remodeling services.  *Id.* ¶¶ 13, 14.  Gravity Video is a New York corporation that provides video production services.  *Id.* ¶¶ 17, 18.

Pizzazz is a Florida limited liability company and full-service beauty salon located in Fort Lauderdale, Florida.  *Id.* ¶¶ 19, 20.  Eric Snipes is a Georgia corporation that provides professional musical entertainment.  *Id.* ¶¶ 21, 22.

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; BofA's renewed motion to compel arbitration; and memoranda in support thereof.  ECF Nos. 35, 46.

Beauté Nest is a Virginia limited liability company that provides full-service nail and beauty spa services. *Id.* ¶¶ 23, 24. Fruitful Bear is a Washington limited liability company that specializes in home renovation services. *Id.* ¶¶ 15, 16.

BofA is a national bank with its headquarters and principal place of business located in Charlotte, North Carolina. *Id.* ¶ 27. BofA provides a variety of financial services to small businesses, including deposit and loan services. *See id.*; *see also* ECF No. 46-1 at 2.

Plaintiffs' Business Deposit Accounts

Between 2017 and 2022, Modern Perfection, Gravity Video, Pizzazz!, Eric Snipes and Beauté Nest opened business deposit accounts with BofA. ECF No. 46-4, Yuasa Decl. ¶¶ 16–39. As a requirement for opening these accounts, representatives for Plaintiffs executed signature cards ("Signature Cards"), which, among other things, acknowledge that the business deposit accounts would be governed by the terms of a deposit agreement and disclosure (the "Deposit Agreement").[2] *See id.*

The Signature Cards provide, in relevant part, that:

> By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures . . . The Deposit Agreement includes a provision for alternative dispute resolution.

*See, e.g.*, ECF No. 46-7, Yuasa Decl., Ex. 3 (Modern Perfection Signature Card) at 4. Modern Perfection, Gravity Video, Pizzazz!, Eric Snipes and Beauté Nest also received a copy of the Deposit Agreement when they executed the Signature Cards. ECF No. 46-4, Yuasa Decl. ¶¶ 18, 23, 27, 32, 37.

---

[2] In support of its motion to compel arbitration, BofA has submitted the Declaration of Chris Yuasa, a Senior Vice President at BofA. ECF No. 46-4, Yuasa Decl. In his Declaration, Mr. Yuasa states that it is BofA's regular practice to provide deposit agreements to all companies opening new business deposit accounts. *Id.* ¶ 10. BofA has periodically modified the Deposit Agreement. *See* ECF Nos. 46-8, 46-10, 46-14, 46-18. But, BofA represents to the Court that there have been no substantive changes to the "Resolving Claims" provision of the Deposit Agreement since 2009. ECF No. 46-4, Yuasa Decl. ¶¶ 40, 42.

On June 28, 2007, Fruitful, Inc., which is the predecessor company to Plaintiff Fruitful Bear, also opened a business deposit account with BofA. ECF No. 46-25, Van Dyke Decl. ¶¶ 4, 11–15. When Fruitful, Inc. opened this account, its representatives executed a signature card, which includes an acknowledgement that the deposit account would be governed by the terms of the Deposit Agreement (the "Fruitful, Inc. Signature Card").[3] *Id.* ¶¶ 12–14; *see* ECF No. 46-26, Van Dyke Decl., Ex. 1. The Fruitful, Inc. Signature Card provides, in relevant part, that:

> It is resolved and agreed that Bank of America, N.A. (hereinafter "Bank") is selected as the Bank of deposit for the funds of this Business Unit and that the terms of the Customer Agreement, as now or hereafter in effect, shall be binding on this Business Unit with respect to any checking, savings or certificate of deposit account (each hereafter "Deposit Account") opened with Bank pursuant to this Business Resolution of Authority Account Contract (hereafter "Resolution"). . . . This is a continuing Resolution upon which Bank may fully rely without inquiry, unless terminated in accordance with the Customer Agreement by Authorized Signers or by the Board of Directors or similar governing body of the Business Unit.

ECF No. 46-26, Van Dyke Decl., Ex. 1 at 1. The Fruitful, Inc. Signature Card bears the signature of the co-owner of the company, Tammy Graham, and lists co-owner Karl Graham as the company's authorized representative. ECF No. 46-25, Van Dyke Decl. ¶ 12. Fruitful, Inc. also received a copy of the Deposit Agreement when it executed the Fruitful, Inc. Signature Card. ECF No. 46-4, Yuasa Decl. ¶ 13.

In 2017, the Grahams started a new company, Plaintiff Fruitful Bear, LLC. ECF No. 46-28, Van Dyke Decl., Ex. 3. Although the Grahams dissolved Fruitful, Inc. in 2019, they continued to use the BofA business deposit account associated with Fruitful, Inc in connection with Fruitful Bear's business operations. ECF No. 46-4, Yuasa Decl. ¶ 52; *see also* ECF No. 46-27, Van Dyke Decl., Ex. 2. And so, Fruitful Bear used the Fruitful, Inc. BofA business deposit account to deposit its PPP loan funds. ECF No. 46-4, Yuasa Decl. ¶ 52.

---

[3] The Deposit Agreement is also referred to as the "Customer Agreement." *See* ECF No. 46-4, Yuasa Decl. ¶ 13.

The Deposit Agreement

The parties agree that Plaintiffs and BofA entered into a Deposit Agreement that governs Plaintiffs' business deposit accounts. *Id.* ¶¶ 16-39; *see* ECF No. 48 at 3-4, 23. Relevant to the pending motion to compel arbitration, the Deposit Agreement associated with Plaintiffs' business deposit accounts contains a "Resolving Claims" provision that provides, in relevant part, that:

> **Resolving Claims**
> If you and we are not able to resolve a claim ourselves, then you and we agree that the claim will be resolved as provided in this *Resolving Claims* section. This is a dispute resolution provision. Please read it carefully.
>
> **What does "Claim" Mean?**
> Claim means any claim, dispute or controversy (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief) by either you or us against the other, or against the employees or agents of the other, arising from or relating in any way to this deposit agreement (including any renewals, extensions or modifications) or the deposit relationship between us . . .
>
> **How Claims on Business Accounts will be Resolved**
> You have the right to compel us at your option, and we have the right to compel you at our option, to resolve a Claim relating to a business account by binding arbitration. If neither you or we decide to compel arbitration, then the Claim will be resolved in court by a judge without a jury, as permitted by law. . .The arbitration, judicial reference or trial by a judge will take place on an individual basis without resort to any form of class or representative action.
>
> If you and we are unable to agree on an arbitrator, then you agree to choose one of the following Administrators within 10 days of our written notice that an agreement cannot be reached.
>
> • JAMS Resolution Center . . .
> • American Arbitration Association ("AAA") . . .
>
> The arbitrator, sitting alone without a jury, will decide questions of law and fact and will resolve the Claim. This includes the applicability of this Resolving Claims Section and the validity of the deposit agreement, except that the arbitrator may not decide or resolve any Claim challenging the validity of the Class Action and Jury Trial Waiver. The validity of the Class Action and Jury Trial Waiver will be decided only by a judicial referee or a court. . .

5

>The arbitration of any matter involves interstate commerce and is governed by the Federal Arbitration Act. . . Arbitrations will be governed by the rules of the Administrator to the extent those rules do not conflict with this Resolving Claims section.

ECF No. 46-17, Yuasa Decl., Ex. 13 at 44-45.

Plaintiffs' PPP Loans

On March 27, 2020, Congress enacted the CARES Act in response to the COVID-19 pandemic.  *See* Coronavirus Aid, Relief and Economic Security Act, Publ. L. No. 116-136, 134 Stat. 281 (2020).  The CARES Act allocated $349 billion to the Small Business Administration to provide loans made by private lenders to eligible small businesses.  *Id.* §§ 1102, 1107.  Under the PPP, the Federal Government would forgive a borrowers' loan amount, subject to certain eligibility requirements.  *See id.*

In April and May 2020, Plaintiffs executed promissory notes (the "Promissory Notes") with BofA to receive PPP loans.  ECF No. 35 ¶ 41; ECF No. 46-4, Yuasa Decl. ¶¶ 45–51.  Paragraph 1 of the Promissory Notes addresses the business deposit accounts and the use of loan proceeds and provides, in relevant part, that:

>In consideration of the Loan received by Borrower from Bank, Borrower agrees as follows . . . Borrower is required to maintain a deposit account with Bank of America, N.A. (the "Deposit Account") until the Loan is either forgiven in full or the Loan is fully paid by Borrower. Borrower acknowledges and agrees that the proceeds of the Loan shall be deposited by Bank into the Deposit Account. . . .

ECF Nos. 46-19-46-24, Yuasa Decl., Exs. 15–20 ¶ 1.  Paragraph 9 of the Promissory Notes addresses choice of law, jurisdiction and venue and provides, in relevant part:

>[T]his Note shall be governed and interpreted according to the internal laws of the state of Borrower's principal place of business (the "Governing Law State"), without regard to any choice of law, rules or principals to the contrary. . . . Borrower and Bank agree and consent to be subject to the personal jurisdiction of any state or federal court located in the [state of Borrower's principal place of business] so that trial shall only be conducted by a court in that state.

*Id.* ¶ 9.  Lasty, Paragraph 10 of the Promissory Notes provides, in relevant part, that:

> Bank, by its acceptance hereof, and the making of the Loan and Borrower understand and agree that this Note constitutes the complete understanding between them.

*Id.* ¶ 10.

The parties disagree about whether the Promissory Notes incorporate the Deposit Agreement and the Resolving Claims provision contained therein.  In this regard, BofA argues that Plaintiffs' claims in this action are subject to the Resolving Claims provision contained in the Deposit Agreement, because the plain language of the Promissory Notes makes clear that Plaintiffs' PPP loan proceeds will be transferred into their BofA business deposit accounts.  ECF No. 46-1 at 10-24; ECF No. 53 at 3-4.  And so, BofA seeks to compel Plaintiffs to arbitrate the claims in this putative class action.  ECF Nos. 46 and 46-1.

Plaintiffs counter that their claims in this case are not subject to the Deposit Agreement's Resolving Claims provision, because their PPP loans are governed by the Promissory Notes, which do not incorporate the terms of the Deposit Agreement.  *See* ECF No. 48 at 6-16.  And so, Plaintiffs argue that they are not required to arbitrate this dispute.  *Id.*

### B.     Procedural Background

Plaintiffs commenced this action on August 22, 2022.  ECF No. 1.  On November 15, 2022, BofA filed a motion to compel arbitration and to stay or dismiss this matter and a motion to dismiss the complaint.  ECF Nos. 24, 25.

On December 6, 2022, Plaintiffs filed an amended complaint.  ECF No. 35.  On February 24, 2023, BofA filed a renewed motion to compel arbitration and to stay or dismiss this matter and a renewed motion to dismiss the amended complaint.  ECF Nos. 46, 47.

On March 24, 2023, Plaintiffs filed responses in opposition to BofA's renewed motions.  ECF Nos. 48, 49.  On April 7, 2023, BofA filed replies in support of its renewed motions.  ECF Nos. 53, 54.

On July 3, 2023, BofA filed a notice of supplemental authority in support of its renewed motions.  ECF No. 55.  Thereafter, Plaintiffs filed a response in opposition to BofA's notice of supplemental authority on July 19, 2023.  ECF No. 58.

BofA's renewed motions to compel arbitration and to stay or dismiss this matter and to dismiss the amended complaint having been fully briefed, the Court resolves the pending motions.

### III. LEGAL STANDARDS

#### A.     Fed. R. Civ. P. 56

This Court treats motions to compel arbitration as motions for summary judgment pursuant to Fed. R. Civ. P. 56.  *See, e.g.*, *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute, . . . or where documents outside the pleadings must be considered") (internal citations omitted); *Owen v. CBRE, Inc.*, No. 16-773, 2016 WL 7033973, at *2 (D. Md. Dec. 2, 2016) (citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this regard, a fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Id.*  When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor.  *Id.* at 255 (citation omitted).  But the Court may rely only on facts supported in the record.  *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings.  *See id.*

#### B.     The Federal Arbitration Act

The FAA "requires courts to enforce covered arbitration Agreement according to their terms."  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citations omitted).  Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.  And so, the FAA "establishes 'a liberal federal policy favoring arbitration Agreement.'" *Epic Sys.*

*Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The FAA also provides that, when presented with such a petition, a "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But, "[i]f the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." *Id.*

In addition, Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* § 3. And so, the United States Court of Appeals for the Fourth Circuit has recognized that the FAA provides two parallel methods for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration under Section 3, and an affirmative order to engage in arbitration under Section 4. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. V. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d. 95, 106 (D. Md. 2021).

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal*

9

*Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets existing).  And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. V. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate").  But "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).  And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).[4]

In addition, the Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67).  But "if the claimant specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." *Id.* (citing *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)).  And so, in assessing the enforceability of an arbitration agreement containing a delegation clause, the Court first must decide whether a plaintiff has lodged a challenge against the delegation clause.  *Id.* at 338 (citation omitted).  If the Court concludes that a plaintiff "specifically challenged the

---

[4] The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'").

enforceability of the delegation provision," the Court "then must decide whether the delegation provision is unenforceable 'upon such grounds as exist at law or in equity.'" *Id.* (quoting *Minnieland*, 867 F.3d at 455).

Lastly, the Fourth Circuit has held it mandatory that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)). The Fourth Circuit has also determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration on several occasions. *See, e.g.*, *Willcock v. My Goodness! Games, Inc.*, No. 16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Phears v. LVNV Funding, LLC*, No. 20-2843, 2020 WL 7054806, at *3 (D. Md. Dec. 2, 2020).

IV.   **LEGAL ANALYSIS**

BofA seeks to compel arbitration, and to either stay or dismiss this putative class action, upon the grounds that: (1) the parties' Deposit Agreement contains a valid and enforceable arbitration agreement and delegation clause; (2) Plaintiffs are bound by this arbitration agreement; (3) Plaintiffs' claims in this action fall within the scope of the parties' arbitration agreement; and (4) Plaintiffs' claims are, therefore, arbitrable. ECF No. 46-1 at 10-24; ECF No. 53 at 3-4.

Plaintiffs counter that they should not be compelled to arbitrate this dispute, because: (1) there is no agreement between the parties to arbitrate; (2) the arbitration provision and the Deposit Agreement are unconscionable; (3) the arbitration provision does not cover the claims in this case; (4) Plaintiffs' claims do not significantly relate to the Deposit Agreement; (5) the indemnification provision in the Deposit Agreement has no bearing on arbitration; and (6) personal jurisdiction is required to compel arbitration. ECF. No. 48 at 8-30. And so, Plaintiffs request that the Court deny BofA's motion to compel arbitration. *Id.* at 31.

For the reasons that follow, a careful reading of the Deposit Agreement shows that the parties have entered into an arbitration agreement that contains a valid and enforceable delegation clause. The plain language of the delegation clause also makes clear that the parties must address threshold issues of arbitrability before the arbitrator. And so, the Court: (1)

11

GRANTS BofA's motion to compel arbitration and to dismiss or stay this matter; (2) DENIES-as-MOOT BofA's motion to dismiss the amended complaint; and (3) DISMISSES the amended complaint.

### A.     The Deposit Agreement Contains A Valid Delegation Clause

While the parties dispute whether the Deposit Agreement applies to the breach of contract and fraud claims in this case, the parties agree that they have entered into the Deposit Agreement and that this agreement contains an arbitration provision.  ECF Nos. 46-1 at 2-3; 48 at 3-4.  And so, the Court begins its analysis by considering the text of the arbitration provision set forth in the Deposit Agreement, to determine whether it contains a valid and enforceable delegation clause.  *Murray*, 289 F.3d at 302 (citation omitted) (the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."); *Muriithi*, 712 F.3d at 179 (explaining that this Court applies "ordinary state-law principles that govern the formation of contracts and the federal substantive law of arbitrability," when determining whether there is a valid arbitration agreement) (citation omitted); *Gibbs*, 967 F.3d at 337 (quoting *Rent-A-Center*, 561 U.S. at 68-69)( "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'").

The Deposit Agreement's "Resolving Claims" provision provides, in relevant part, that:

> **Resolving Claims**
> If you and we are not able to resolve a claim ourselves, then you and we agree that the claim will be resolved as provided in this *Resolving Claims* section.  This is a dispute resolution provision.  Please read it carefully.
>
> **What does "Claim" Mean?**
> Claim means any claim, dispute or controversy (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief) by either you or us against the other, or against the employees or agents of the other, arising from or relating in any way to this deposit agreement (including any renewals, extensions or modifications) or the deposit relationship between us . . .
>
> **How Claims on Business Accounts will be Resolved**
> *You have the right to compel us at your option, and we have the right to compel you at our option, to resolve a Claim relating to a business account*

> *by binding arbitration.* If neither you or we decide to compel arbitration, then the Claim will be resolved in court by a judge without a jury, as permitted by law. . .The arbitration, judicial reference or trial by a judge will take place on an individual basis without resort to any form of class or representative action.
>
> If you and we are unable to agree on an arbitrator, then you agree to choose one of the following Administrators within 10 days of our written notice that an agreement cannot be reached.
>
> > • JAMS Resolution Center . . .
> > • American Arbitration Association ("AAA") . . .
>
> *The arbitrator, sitting alone without a jury, will decide questions of law and fact and will resolve the Claim. This includes the applicability of this Resolving Claims Section and the validity of the deposit agreement, except that the arbitrator may not decide or resolve any Claim challenging the validity of the Class Action and Jury Trial Waiver*. The validity of the Class Action and Jury Trial Waiver will be decided only by a judicial referee or a court. . .

ECF No. 46-17, Yuasa Decl., Ex. 13 at 44-45 (emphasis supplied).  The Court reads this language to reflect the parties' intent to arbitrate disputes arising from Plaintiffs' business deposit accounts and to delegate threshold issues of arbitrability to the arbitrator for several reasons.

First, the plain language of the Deposit Agreement's Resolving Claims provision makes clear that the parties have agreed to arbitrate disputes involving "Claims" related to Plaintiffs' business deposit accounts.  Notably, the Resolving Claims provision provides that "[Plaintiffs] have the right to compel [BofA] at [their] option, and [BofA] have the right to compel [Plaintiffs] at our option, to resolve a Claim relating to a business account *by binding arbitration*." *Id.* at 44 (emphasis added).  The Resolving Claims provision also makes clear that it is a dispute resolution agreement between the parties, by expressly stating that "[t]his is a dispute resolution provision."[5]  *Id.*  And so, the parties have agreed to arbitrate disputes related to Plaintiffs' business deposit accounts.

---

[5] Other language in the Resolving Claims provision reinforces the Court's reading of this provision to reflect the parties' intent to arbitrate disputes about Plaintiffs' business deposit accounts.  Notably, the Resolving Claims provision provides that the parties' agreement "is governed by the Federal Arbitration Act."  ECF No. 46-17, Yuasa Decl., Ex. 13.

Second, and specifically relevant to this dispute, the Resolving Claims provision contains a delegation clause that clearly and unmistakably delegates the question of arbitrability to the arbitrator. [6]  As the Fourth Circuit has recognized, "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'"  *Gibbs*, 967 F.3d at 337 (quoting *Rent-A-Center*, 561 U.S. at 68-69).  And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration."  *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67).

In this regard, the Resolving Claims provision provides that:

> The arbitrator, sitting alone without a jury, will decide questions of law and fact and will resolve the Claim. This includes the applicability of this Resolving Claims Section and the validity of the deposit agreement, except that the arbitrator may not decide or resolve any Claim challenging the validity of the Class Action and Jury Trial Waiver.

ECF No. 46-17, Yuasa Decl., Ex. 13 at 45.  The Court reads this language to require that all "questions of law and fact" will be decided by the arbitrator.  *Id.* at 45.  This language also makes clear that the arbitrator will resolve any disputes between the parties about "the applicability of this Resolving Claims Section and the validity of the [Deposit Agreement]."  *Id.* And so, the plain text of the delegation clause shows that the parties have agreed to have the arbitrator resolve issues regarding: (1) the applicability of the arbitration agreement to this dispute and (2) the validity of the Deposit Agreement.  *Id.*

### B.   Plaintiffs' Challenges To The Deposit Agreement Must Be Resolved By The Arbitrator

The plain text of the arbitration agreement also makes clear that Plaintiffs must raise their arguments about arbitrability before the arbitrator.  As the Fourth Circuit has held, when the

---

[6] Plaintiffs do not specifically challenge the validity of the delegation clause.  *See* ECF No. 48 at 17-22. While Plaintiffs generally argue that the Deposit Agreement and its arbitration provision are unconscionable, they do not specifically argue that the delegation clause is unconscionable.  *Id.*  And so, as BofA correctly argues, the issue of unconscionability is appropriately referred to the arbitrator.  ECF No. 53 at 4; *see Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (citing *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 455 (4th Cir. 2017).

14

parties' arbitration agreement "'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration." *Gibbs*, 967 F.3d at 337 (citing *Rent-A-Center*, 561 U.S. at 67).[7]

In their response in opposition to BofA's motion to compel arbitration, Plaintiffs argue that they should not be compelled to arbitrate this dispute, because: (1) there is no agreement between the parties to arbitrate; (2) the arbitration provision in the Deposit Agreement is unconscionable; (3) the arbitration provision does not cover the claims in this case; (4) their claims do not significantly relate to the Deposit Agreement; (5) the indemnification provision in the Deposit Agreement has no bearing on arbitration; and (6) personal jurisdiction is required to compel arbitration. ECF. No. 48 at 8-30. But, as discussed above, the delegation clause in the parties' arbitration agreement requires that the arbitrator must resolve any disputes between the parties about "the applicability of this Resolving Claims Section and the validity of the [Deposit Agreement]." ECF No. 46-17, Yuasa Decl., Ex. 13 at 45. Because Plaintiffs seek to challenge the arbitrability of their claims under the Deposit Agreement and its Resolving Claims provision, the Court is satisfied that this challenge must be referred to the arbitrator for resolution. *Gibbs*, 967 F.3d at 337 (citing *Rent-A-Center*, 561 U.S. at 67); *see also Gray v. Schmidt Baking Co., Inc.*, No. 22-CV-00463-LKG, 2023 WL 2185778, at *10 (D. Md. Feb. 23, 2023; *Bailey, et al. v. Thompson Creek Window Co., et al.*, No. 21-CV-00844-LKG, 2021 WL 5053094, at *9 (D. Md. Nov. 1, 2021), *aff'd sub nom. Bailey v. Thompson Creek Window Co.*, No. 21-2345, 2023 WL 4787443 (4th Cir. July 27, 2023).

---

[7] The Resolving Claims provision appears to broadly define the types of claims that are covered by the parties' arbitration agreement and provides that:

> Claim means any claim, dispute or controversy (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief) by either you or us against the other, or against the employees or agents of the other, arising from or relating in any way to this deposit agreement (including any renewals, extensions or modifications) or the deposit relationship between us . . .

ECF No. 46-17, Yuasa Decl., Ex. 13 at 44.

### C. The Court Dismisses The Amended Complaint

As a final matter, the Court is also satisfied that dismissal of this matter is appropriate, because the parties' arbitration agreement contains a valid and enforceable delegation clause that requires the parties to arbitrate gateway issues such as arbitrability. *Gibbs*, 967 F.3d at 337 (quoting *Rent-A-Center*, 561 U.S. at 67) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration). The Fourth Circuit has determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l*, 252 F.3d at 709-10. And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration on several occasions. *See, e.g.*, *Willcock*, 2018 WL 3970474, at *4; *Phears*, 2020 WL 7054806, at *3.

In this case, all claims in this putative class action are subject to arbitration with regards to, at least, the gateway issue of the arbitrability of Plaintiffs' claims. For this reason, the Court GRANTS BofA's motion to compel arbitration and DISMISSES the amended complaint.

### V. CONCLUSION

In sum, a careful reading of the Deposit Agreement's Resolving Claims provision shows that the parties' arbitration agreement contains a valid and enforceable delegation clause that requires the parties to arbitrate gateway issues regarding the arbitrability of Plaintiffs' breach of contract and fraud claims in this action. And so, for the foregoing reasons, the Court:

(1) **GRANTS** BofA's motion to compel arbitration and to dismiss or stay this matter;

(2) **DENIES-as-MOOT** BofA's motion to dismiss; and

(3) **DISMISSES** the amended complaint.

A separate Order shall issue.

    **IT IS SO ORDERED.**

                                               s/Lydia Kay Griggsby
                                               LYDIA KAY GRIGGSBY
                                               United States District Judge